No. 25-2275

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

---

JOHN P. TOMKINS,

*Petitioner-Appellant,*

v.

BRIAN LAMMER, WARDEN,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois
No. 3:25-cv-50254
Hon. Rebecca R. Pallmeyer

---

## BRIEF OF *AMICI CURIAE* THE AMERICAN CIVIL LIBERTIES UNION AND THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS IN SUPPORT OF THE PLAINTIFF-APPELLANT AND REVERSAL

---

Jennifer A. Wedekind
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
jwedekind@aclu.org

Priyanka Menon
  *Counsel of Record*
Camille Bennett
ROGER BALDWIN FOUNDATION OF
ACLU, INC.
150 N. Michigan Ave. Suite 600
Chicago, IL 60601
pmenon@aclu-il.org
cbennett@aclu-il.org

*Counsel for* Amici Curiae

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25-2275</u>

Short Caption: <u>John P. Tomkins v. Brian Lammer, Warden</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>The American Civil Liberties Union and the American Civil Liberties Union of Illinois as amici curiae</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Roger Baldwin Foundation of ACLU, Inc.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>n/a</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>n/a</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>n/a</u>

Attorney's Signature: <u>P. M.</u>    Date: <u>03/24/2026</u>

Attorney's Printed Name: <u>Priyanka Menon</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑  No ☐

Address: <u>150 N. Michigan Ave. Suite 600 Chicago, IL 60601</u>

Phone Number: <u>(312) 201-9748 ext. 318</u>    Fax Number: _____

E-Mail Address: <u>pmenon@aclu-il.org</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As          Clear Form

Appellate Court No: 25-2275

Short Caption: John P. Tomkins v. Brian Lammer, Warden

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 The American Civil Liberties Union and the American Civil Liberties Union of Illinois as amici curiae

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Roger Baldwin Foundation of ACLU, Inc.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Camille Bennett    Date: 03/24/2026

Attorney's Printed Name:  Camille Bennett

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address:  150 N. Michigan Ave., Suite 600, Chicago, IL 60601

Phone Number: (312) 201-9746 ext. 336    Fax Number:

E-Mail Address: cbennett@aclu-il.org

rev. 12/19 AK

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2275

Short Caption: Tomkins v. Lammer

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
American Civil Liberties Union; American Civil Liberties Union of Illinois

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
American Civil Liberties Union Foundation; Roger Baldwin Foundation of ACLU, Inc.

(3)      If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         N/A

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

Attorney's Signature: /s/ Jennifer A. Wedekind      Date: 03/24/2026

Attorney's Printed Name:  Jennifer A. Wedekind

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address:  915 15th St NW

     Washington, DC 20005

Phone Number: 202-548-6610      Fax Number:

E-Mail Address: jwedekind@aclu.org

rev. 12/19 AK

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

INTEREST OF *AMICI CURIAE* ................................................................vii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 3

I.  Neither *Preiser* nor its progeny restrict the scope of habeas corpus based on the relief sought. .......................................................... 4

II.  *Glaus* contravenes the Supreme Court's and this Court's understanding of habeas. .......................................................... 10

III.  Precluding judicial review of conditions-of-confinement claims raises serious constitutional problems. ...................................... 17

CONCLUSION ........................................................................................... 21

CERTIFICATE OF COMPLIANCE ........................................................ 23

CERTIFICATE OF SERVICE................................................................... 24

i

# TABLE OF AUTHORITIES

## Cases

*Benson v. McMahon*,
127 U.S. 457 (1888) ....................................................................15

*Boumediene v. Bush*,
553 U.S. 723 (2008) ...................................................................11

*Brooks v. Richardson*,
131 F.4th 613 (7th Cir. 2025) ..............................................19, 20

*Brown v. Plata*,
563 U.S. 493 (2011) ...............................................................18, 21

*Carafas v. LaVallee*,
391 U.S. 234 (1968) ....................................................................11

*Chazen v. Marske*,
938 F.3d 851 (7th Cir. 2019) ....................................................14

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) ......................................................................19

*Cruz v. Beto*,
405 U.S. 319 (1972) ......................................................................2

*Diaz v. Romer*,
801 F. Supp. 405 (D. Colo. 1992),
*aff'd*, 9 F.3d 116 (10th Cir. 1993)..........................................viii

*Dockery v. Fischer*,
253 F. Supp. 3d 832 (S.D. Miss. 2015)....................................vii

*Duvall v. O'Malley*,
No. CV ELH-94-2541, 2016 WL 3523682 (D. Md. June 28, 2016)......vii

*Edwards v. Balisok*,
   520 U.S. 641 (1997) ...............................................................................8

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ................................................................................1

*Ex parte Hull*,
   312 U.S. 546 (1941) .............................................................................16

*Ex parte Yerger*,
   75 U.S. 85 (1868) .................................................................................10

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ..........................................................................1, 17

*Gibson v. Puckett*,
   82 F. Supp. 2d 992 (E.D. Wis. 2000) ...................................................10

*Glaus v. Anderson*,
   408 F.3d 382 (7th Cir. 2005) .......................................................... passim

*Graham v. Broglin*,
   922 F.2d 379 (7th Cir.1991) ..............................................3, 11, 13, 15

*Harris v. Nelson*,
   394 U.S. 286 (1969) .............................................................................11

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ......................................................................5, 8, 10

*Helling v. McKinney*,
   509 U.S. 25 (1993) ...............................................................................16

*Hensley v. Mun. Ct.*,
   411 U.S. 345 (1973) ...............................................................................4

*I.N.S. v. St. Cyr*,
   533 U.S. 289 (2001) ...............................................................................8

*In re Bonner*,
  151 U.S. 242 (1894) ..................................................................15

*Johnson v. Avery*,
  393 U.S. 483 (1969) .............................................................2, 9, 16

*Jones v. Cunningham*,
  371 U.S. 236 (1963) ................................................................11

*Jones v. Hendrix*,
  599 U.S. 465 (2023) ...............................................................8, 14

*Linder v. United States*,
  937 F.3d 1087 (7th Cir. 2019) .............................................20

*Lippert v. Hughes*,
  No. 1:10-cv-04603 (N.D. Ill.)...............................................viii

*Marbury v. Madison*,
  5 U.S. 137 (1803) ....................................................................1

*McCollum v. Miller*,
  695 F.2d 1044 (7th Cir. 1982) .........................................10, 16

*Monroe v. Hughes*,
  No. 3:18-cv-00156-NJR-MAB (S.D. Ill.)..............................viii

*Nance v. Ward*,
  597 U.S. 159 (2022) ..........................................................5, 7, 9, 10

*Nelson v. Campbell*,
  541 U.S. 637 (2004) ..................................................................9

*Olivier v. City of Brandon*,
  607 U.S. --- (2026), No. 24-993, 2026 WL 783725
  (U.S. Mar. 20, 2026) ...............................................................10

*Palmigiano v. Garrahy*,
  707 F.2d 636 (1st Cir. 1983) ................................................................ vii

*Parsons v. Ryan*,
  No. CV-12-0601-PHX-DKD, 2018 WL 3239692 (D. Ariz. June 22,
  2018), *aff'd in part, rev'd in part and remanded on other grounds*,
  949 F.3d 443 (9th Cir. 2020) ............................................................... vii

*Plyler v. Evatt*,
  902 F.2d 273 (4th Cir. 1990) ............................................................... vii

*Preiser v. Rodriguez*,
  411 U.S. 475 (1973) ..................................................................... passim

*Rasul v. Bush*,
  542 U.S. 466 (2004) ............................................................................. 8

*Rhodes v. Chapman*,
  452 U.S. 337 (1981) ............................................................................. 1

*Riker v. Gibbons*,
  No. 3:08-CV-00115-LRH, 2010 WL 4366012
  (D. Nev. Oct. 28, 2010) ..................................................................... viii

*Robinson v. Sherrod*,
  631 F.3d 839 (7th Cir. 2011) .............................................................. 20

*Samak v. Warden, FCC Coleman-Medium*,
  766 F.3d 1271 (11th Cir. 2014) .......................................................... 18

*Sandin v. Conner*,
  515 U.S. 472 (1995) ........................................................................... 10

*Sargeant v. Barfield*,
  87 F.4th 358 (7th Cir. 2023) .......................................................... 19, 20

*Skyberg v. James*,
  No. 24-3156, 2025 WL 1672871 (7th Cir. June 13, 2025) .................... 19

*Thomas v. Blackard,*
　2 F.4th 716 (7th Cir. 2021) ................................................................1

*Thomas v. Carmichael,*
　164 F.4th 1058 (7th Cir. 2026)..........................................................19

*Turner v. Safley,*
　482 U.S. 78 (1987) ..........................................................................1, 2

*Walker v. Wainwright,*
　390 U.S. 335 (1968) ............................................................................8

*Webster v. Doe,*
　486 U.S. 592 (1988) ..........................................................................21

*Wilkinson v. Dotson,*
　544 U.S. 74 (2005) ..........................................................................6, 7

*Wilwording v. Swenson,*
　404 U.S. 249 (1971) ............................................................................9

*Wolff v. McDonnell,*
　418 U.S. 539 (1974) ............................................................................1

*Ziglar v. Abbasi,*
　582 U.S. 120 (2017) ..........................................................................19

## Statutes

28 U.S.C. § 2241.......................................................................3, 20, 21

28 U.S.C. § 2254..............................................................................5, 13

28 U.S.C. § 2255.................................................................................14

42 U.S.C. § 1983................................................................6, 9, 14, 18

## INTEREST OF *AMICI CURIAE*[1]

The **American Civil Liberties Union** ("ACLU") is a nationwide, non-profit, nonpartisan organization dedicated to the principles of liberty and equality embodied in the U.S. Constitution and this Nation's civil rights laws. The ACLU established the National Prison Project ("NPP") in 1972 to protect and promote the civil and constitutional rights of incarcerated people. The NPP has decades of experience litigating on behalf of incarcerated people and since 1990 has represented incarcerated people in five cases before the U.S. Supreme Court. Courts across the country have repeatedly recognized the special expertise of the NPP in conditions of confinement cases.[2]

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No party, party's counsel, or person, other than the *amici*, their members, or their counsel, contributed money that was intended to fund preparation or submission of this brief. Petitioner-Appellant has consented to the filing of this brief. Respondent-Appellee has not appeared in this matter.

[2] *See, e.g., Plyler v. Evatt*, 902 F.2d 273, 278 (4th Cir. 1990); *Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983); *Parsons v. Ryan*, No. CV-12-0601-PHX-DKD, 2018 WL 3239692, at *3 (D. Ariz. June 22, 2018), *aff'd in part, rev'd in part and remanded on other grounds*, 949 F.3d 443 (9th Cir. 2020); *Duvall v. O'Malley*, No. CV ELH-94-2541, 2016 WL 3523682, at *9 (D. Md. June 28, 2016); *Dockery v. Fischer*, 253 F. Supp. 3d 832, 856 (S.D. Miss. 2015); *Riker v. Gibbons*, No. 3:08-CV-00115-

The **American Civil Liberties Union of Illinois** is the ACLU's Illinois state affiliate, with more than 66,000 members and supporters across Illinois. The ACLU of Illinois is a statewide, non-profit, non-partisan organization dedicated to protecting and defending civil rights and civil liberties and promoting fairness and dignity for all people in Illinois. The ACLU of Illinois has appeared before numerous courts, including this Court, in a wide range of cases on behalf of persons in custody. *See, e.g.*, *Lippert v. Hughes*, No. 1:10-cv-04603 (N.D. Ill.) (class action on behalf of Illinois state prisoners with physical healthcare needs); *Monroe v. Hughes*, No. 3:18-cv-00156-NJR-MAB (S.D. Ill.) (class action on behalf of prisoners with gender dysphoria in Illinois state prisons).

---

LRH, 2010 WL 4366012, at \*4 (D. Nev. Oct. 28, 2010); *Diaz v. Romer*, 801 F. Supp. 405, 410 (D. Colo. 1992), *aff'd*, 9 F.3d 116 (10th Cir. 1993).

## INTRODUCTION

The Eighth Amendment guarantees incarcerated people the right to humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) ("[T]he central essence of the Eighth Amendment . . . is that prisoners cannot be confined in inhumane conditions."). Federal and state officials alike must ensure that all those held in their custody receive at least "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976) ("The [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency[.]" (internal quotation marks omitted)). These officials must also respect the other constitutional rights that incarcerated people retain, including the safeguards of the First, Fifth, and Fourteenth Amendments. *See Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974); *Turner v. Safley*, 482 U.S. 78, 84 (1987).

The Constitution's substantive protections come with another: the guarantee of access to remedies. "It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803). This principle

1

applies with equal force on both sides of the prison gates. *See Turner*, 482 U.S. at 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). "[P]ersons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes 'access of prisoners to the courts for the purpose of presenting their complaints.'" *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (quoting *Johnson v. Avery*, 393 U.S. 483, 485 (1969)).

In *Glaus v. Anderson*, 408 F.3d 382 (7th Cir. 2005), this Court ignored *Marbury*. *Glaus* held that there is no "space within the bounds of habeas corpus for challenging unconstitutional prison conditions," leaving most federally incarcerated people with no means of vindicating their constitutional rights. 408 F.3d at 386–87. *Glaus*'s conclusion was wrong. Allowing a challenge to unconstitutional conditions of confinement to proceed on a petition for a writ of habeas corpus accords with the Supreme Court's interpretation of our civil rights laws and the federal habeas statute, and avoids the serious constitutional concerns that *Glaus*'s contrary reading raises. This Court should set aside *Glaus* and restore the constitutional order Chief Justice Marshall recognized two centuries prior.

2

## ARGUMENT

The Supreme Court has never held civil rights remedies and habeas corpus to be mutually exclusive. Yet in *Glaus*, this Court insisted on exactly that. For more than two decades, this Court has denied that claims challenging the constitutionality of prison conditions are cognizable on a petition for a writ of habeas corpus because such claims do not seek "a quantum change in the level of custody." *Glaus*, 408 F.3d at 386 (quoting *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)). *Glaus*'s approach ignores the obvious: Constitutional claims about prison conditions fall within the literal meaning of the federal habeas statute, 28 U.S.C. § 2241, and vindicate exactly those interests in lawful detention that the writ of habeas corpus is meant to protect.

This Court should reconsider *Glaus*. In addition to lacking any textual foundation, *Glaus* is wrong for more profound reasons. First, *Glaus*'s rationale contradicts the Supreme Court's instructions on how to interpret the overlap between habeas and civil rights remedies. The Supreme Court's reasoning in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), does not limit focus to the form of relief an incarcerated person seeks when determining whether habeas is an appropriate avenue for an

incarcerated plaintiff's claim. *See* 411 U.S. at 499. But this Court adopted that approach anyway in *Glaus*.

Second, *Glaus* conflicts with how the Supreme Court has understood the nature and scope of the habeas remedy. The Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley v. Mun. Ct.*, 411 U.S. 345, 350 (1973). But in insisting that habeas can mean only release, *Glaus* imposes an inflexibility inimical to the writ.

Third, *Glaus*'s interpretation of the federal habeas statute poses serious constitutional problems. *Glaus* currently leaves federally incarcerated plaintiffs with no vehicle to raise their constitutional claims in all but a narrow sliver of Eighth Amendment cases. The Constitution does not tolerate this status quo.

## I.　Neither *Preiser* nor its progeny restrict the scope of habeas corpus based on the relief sought.

For the last fifty-three years, the Supreme Court has provided detailed instructions on how to construe the overlap between civil rights and habeas remedies. *See Preiser*, 411 U.S. at 489. The Court's primary

4

aim has been to ensure that civil rights laws do not "swamp[] the habeas statute's coverage of claims that the prisoner is 'in custody in violation of the Constitution.'" *Nance v. Ward*, 597 U.S. 159, 167 (2022) (quoting 28 U.S.C. § 2254(a)). As a result, claims which fall within the "core of habeas corpus"—namely those attacking the "very fact or duration of [] physical imprisonment" and seeking speedier or immediate release—can only be brought in habeas. *See Preiser*, 411 U.S. at 500. And, under a corollary to that principle, an incarcerated plaintiff "must proceed in habeas when the relief he seeks would 'necessarily imply the invalidity of his conviction or sentence.'" *Nance*, 597 U.S. at 167 (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). Never, however, has the Court's preservation of "the heart of habeas corpus," *Preiser*, 411 U.S. at 498, meant restricting habeas itself.

In *Preiser*, the Supreme Court held that habeas corpus was the exclusive remedy available for incarcerated people seeking equitable relief based on the claim that they are "being unlawfully subjected to physical restraint[.]" *Id.* at 486. The *Preiser* plaintiffs challenged the deprivation of their good-conduct-time credits, claiming that the disciplinary proceedings leading to these deprivations were

5

unconstitutional. *Id.* at 478–82. To cure this unconstitutionality, the plaintiffs sought injunctive relief compelling the restoration of their credits—were that relief granted, each would be immediately released from confinement. *Id.* at 476–77.

The Supreme Court determined that the plaintiffs' claims of unconstitutionality were an "attack [on] the validity of [their] confinement." *Id.* at 489. That meant their suits sounded in habeas, in addition to falling within the "literal terms" of 42 U.S.C. § 1983. *Id.* at 487–88. The *Preiser* Court therefore read an implied limitation into the general language of § 1983 to preserve the "core of habeas corpus" and to reconcile the statutory scheme with the "explicit[] and historic[] design[]" of the more "specific federal habeas corpus statute." *Id.* at 489; *accord Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (noting the "more specific" language of the habeas statute and "the writ's history"). Because the *Preiser* plaintiffs attacked the fact and duration of their custody and sought release, their complaints sounded in habeas alone. *See Preiser*, 411 U.S. at 500.

So *Preiser* maintained the overlap between civil rights and habeas remedies by limiting the reaches of civil rights law—not habeas. *See*

6

*Nance,* 597 U.S. at 167 ("[W]e have insisted that § 1983 contains an 'implicit exception' for actions that lie 'within the core of habeas corpus.'" (quoting *Wilkinson,* 544 U.S. at 79)). Indeed, *Preiser* placed *no* limits on the claims cognizable under the federal habeas statute. *Preiser,* 411 U.S. at 499 ("This is not to say that habeas corpus may not also be available to challenge such prison conditions."). To do so would have been at odds with the *Preiser* Court's goal: preserving the writ as a remedy available to test the lawfulness of an incarcerated person's detention. *See id.* at 489–90.

This concern for the continued viability of habeas extended to how *Preiser* understood the writ's substantive span. Though *Preiser* identifies "the core of habeas corpus," the Court did not limit habeas to that core. *Id.* at 489, 499. When describing the extent of habeas, *Preiser* was clear: "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Id.* at 484. "[T]o deal with such attacks on physical custody, however imposed and whether or not related to conviction by a court, is the long-established function of habeas corpus." *Id.* at 488 n.8. Under *Preiser,* habeas reached any claim which "was an attack on the legality of [a prisoner's] physical confinement itself." *Id.*;

*accord Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("Whatever its other functions, the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention.").

In the ensuing half-century, the Supreme Court has stuck to the path *Preiser* forged. Habeas remains available to "challenge[] the legality of [an incarcerated person's] detention." *Jones v. Hendrix*, 599 U.S. 465, 475 (2023) (cleaned up); *see also Rasul v. Bush*, 542 U.S. 466, 474 (2004) ("[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). And the Court has maintained the overlap between civil rights remedies and habeas, refusing to allow either remedy to overwhelm the other. *See Heck*, 512 U.S. at 481–83, 487; *see also Edwards v. Balisok*, 520 U.S. 641, 644–48 (1997).

Under the view of habeas *Preiser* outlines, a challenge to unconstitutional prison conditions falls naturally within the scope of habeas. An attack on the constitutionality of an incarcerated person's conditions of confinement is an "attack on the legality of [an incarcerated person's] physical confinement." *See Preiser*, 411 U.S. at 488 n.8; *see also*

8

*id.* at 499 ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."). Thanks to this obvious fit, the Supreme Court has never denied that constitutional challenges to conditions of confinement are cognizable in habeas. *See Johnson v. Avery*, 393 U.S. 483 (1969) (allowing conditions of confinement challenge raised in habeas); *Wilwording v. Swenson*, 404 U.S. 249 (1971) (per curiam) (same).[3]

Restricting habeas to deny the cognizability of prison conditions claims in habeas defeats the purpose of the implied exception the Court located in § 1983 and *Preiser*'s discussion of the "core of habeas corpus." *Preiser* sought to rescue habeas from potential obsolescence due to literal breadth of § 1983, not usher the writ sooner to its end by denying obvious applications. *See Preiser*, 411 U.S. at 489–90, 499. As *Preiser* recognized,

---

[3] A constitutional challenge to prison conditions is also one about the "deprivation of [a] right … secured by the Constitution." 42 U.S.C. § 1983. Constitutional conditions-of-confinement challenges, therefore, may also be brought under the civil rights laws. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement … *may* be brought pursuant to § 1983 in the first instance."); *Nance*, 597 U.S. at 168 ("[A] prison-conditions claim *may* be brought as a § 1983 suit.") (emphasis added in both).

habeas and civil rights remedies can and do occupy common ground— conditions-of-confinement challenges present one such instance of overlap. *See id.* at 499–500. What *Preiser* and the cases in its stead accomplish is to make this overlap tenable, by avoiding "'conflicting' judgments about the same conduct," *Olivier v. City of Brandon*, 607 U.S. --- (2026), No. 24-993, 2026 WL 783725, at \*6 (U.S. Mar. 20, 2026) (quoting *Heck*, 512 U.S. at 484), and ensuring that neither remedy "swamp[s]" the other, *Nance*, 597 U.S. at 167. That does not and cannot mean no overlap exists. *See Gibson v. Puckett*, 82 F. Supp. 2d 992, 995 (E.D. Wis. 2000) (observing that "the Seventh Circuit found that disciplinary segregation could be challenged in a habeas action" in *McCollum v. Miller*, 695 F.2d 1044, 1046 (7th Cir. 1982), while "the Supreme Court addressed precisely such a challenge brought as a § 1983 action" in *Sandin v. Conner*, 515 U.S. 472 (1995)).

## II.   *Glaus* contravenes the Supreme Court's and this Court's understanding of habeas.

"The great writ of *habeas corpus* has been for centuries esteemed the best and only sufficient defence of personal freedom." *Ex parte Yerger*, 75 U.S. 85, 95 (1868). *Glaus* undermines the writ's monumental and historic role. Rather than look to whether an incarcerated plaintiff seeks

to challenge the "legality of their physical confinement," *Preiser*, 411 U.S. at 488 n.8, *Glaus* limits habeas to only those claims where "release [is] among the possible remedies," *Glaus*, 408 F.3d at 387. *Glaus* professed to rely on *Preiser* and this Court's decision in *Graham v. Broglin*, 922 F.2d 379 (7th Cir.1991). *See Glaus*, 408 F.3d at 386–88. Neither *Preiser* nor *Graham* sanction *Glaus*'s approach.

"[T]he [federal habeas] statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968); *see also Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("[R]elease need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."). Indeed, the very point of the habeas remedy is its flexibility: "[i]t is not now and never has been a static, narrow, formalistic remedy[.]" *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). "The scope and flexibility of the writ—its capacity to reach all manner of illegal detention—its ability to cut through barriers of form and procedural mazes—have always been emphasized and jealously guarded by courts and lawmakers." *Harris v. Nelson*, 394 U.S. 286, 291 (1969).

11

*Glaus* drains habeas of its flexibility by parsing incarcerated plaintiffs' complaints about their confinement based solely on the remedy they seek. *See Glaus*, 408 F.3d at 387–88. By contrast, *Preiser* distinguishes between what an incarcerated plaintiff attacks in a habeas petition and the relief she would receive upon a successful petition. So *Preiser* separately notes "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody" and "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Similarly, *Preiser* distinguishes between a habeas petitioner's "grievance [] that he is being unlawfully subjected to physical restraint" and that "habeas corpus has been accepted as the specific instrument to obtain release from such confinement." *Id.* at 486. Both aspects matter for whether an incarcerated plaintiff's claim is "an attack on the legality of [his] physical confinement." *Id.* at 488 n.8. But *Glaus* abandons *Preiser* by limiting habeas claims to only those where release is an available remedy. This approach disregards what *Preiser* acknowledged: When determining whether an incarcerated person's complaint about her confinement falls within habeas, a court must look both to the basis of her complaint and to the sort of relief she seeks.

12

*Glaus* also distorts this Court's decision in *Graham*. *Graham* addressed a habeas petition challenging a rule that denied work release eligibility to anyone imprisoned solely for parole violations as a violation of the Fourteenth Amendment's Equal Protection Clause. *Graham*, 922 F.2d at 380. While addressing petitioner Gene Graham's claim, this Court made the following "generalization":

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law.

*Id.* at 381. *Glaus* then transposed *Graham*'s rule to federally incarcerated plaintiffs' conditions-of-confinement claims. *See Glaus*, 408 F.3d at 386.

But *Graham*'s "generalization" isn't so portable. To start, Graham was incarcerated in a state, not federal, prison. *See Graham*, 922 F.2d at 380. So his claim was governed by—and the *Graham* Court addressed—28 U.S.C. § 2254. *See id.* ("We write to clarify the relation between an action for habeas corpus (28 U.S.C. § 2254) and a civil rights action (42

13

U.S.C. § 1983)[.]"). But § 2254 was not at issue in *Glaus*. *See Glaus*, 408 F.3d at 385.

That makes all the difference. The statutory scheme applicable in *Glaus* directly contradicts *Graham*'s division of claims. "As a general rule, a federal prisoner wishing to collaterally attack his conviction or sentence must do so under § 2255 in the district of conviction." *Chazen v. Marske*, 938 F.3d 851, 856 (7th Cir. 2019). In certain circumstances, however, "relief may be granted under § 2241, the general federal habeas corpus statute." *Id.* (citing 28 U.S.C. § 2255(e)). Section 2255(e) expressly allows people held in federal custody to bring claims under § 2241 "challeng[ing] 'the legality of [their] *detention*'"—including that detention's location and environment. *Jones*, 599 U.S. at 475 (quoting § 2255(e)). This statutory language preserves habeas for someone held in federal custody who "might wish to argue that he is being detained in a place or manner not authorized by the sentence, that he has unlawfully been denied parole or good-time credits, or that an administrative sanction affecting the conditions of his detention is illegal." *Id.*; *see also id.* at 476 ("[T]he saving clause guards against the danger that § 2255(e) might be construed to bar manner-of-detention challenges[.]").

14

Applying *Graham*'s rule literally to federally incarcerated plaintiffs—as *Glaus* did—denies that a challenge to the "place," "an administrative sanction affecting the conditions," or any other aspect concerning the "manner" of confinement falls within habeas. That result cannot be correct. *See In re Bonner,* 151 U.S. 242, 255–56, 262 (1894) (granting writ where petitioner challenged the place of his confinement); *Benson v. McMahon,* 127 U.S. 457, 462 (1888) (reviewing claim of unlawful extradition on petition for habeas corpus). *Glaus* stretches *Graham* beyond its obvious bounds to defy both the plain language of the federal habeas statute and the Supreme Court's direct interpretation.

It makes more sense, therefore, to understand *Graham*'s discussion of the difference between habeas and civil rights claims in the context of the particular claim the *Graham* court confronted: an equal protection challenge not directed at an aspect of an individual's custody. *See Graham,* 922 F.2d at 380. Viewed in that light, *Graham*'s generalization draws a distinction between claims that directly implicate an incarcerated plaintiff's confinement and those that do so incidentally. *Cf. Preiser,* 411 U.S. at 492 ("What for a private citizen would be a dispute with his landlord, with his employer, with his tailor, with his neighbor,

15

or with his banker becomes, for the prisoner, a dispute with the State."). This line divides claims about why and how an individual is held in custody—for instance, claims challenging an individual's placement in disciplinary segregation, *see McCollum*, 695 F.2d at 1046, or prison policies restricting an incarcerated person's access to the courts, *see Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson*, 393 U.S. at 484, 489–90— from those that involve confinement simply because the plaintiff is herself confined. Because Graham's equal protection challenge to the parole-eligibility rule was only incidentally connected to his confinement—he did not challenge the "fact" of his own confinement or the "manner" in which prison officials were confining him, but instead sought inclusion in a preferentially treated group—his challenge fell outside the bounds of habeas.

Under this view of *Graham*, an incarcerated plaintiff's complaint about the conditions of confinement is cognizable in habeas. A constitutional challenge to prison conditions is, above all else, a claim that directly implicates the circumstances of an incarcerated person's physical custody. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the

16

conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials" and "also imposes duties on these officials, who must provide humane conditions of confinement." *Farmer*, 511 U.S. at 832. Unlike Graham's equal protection claim, a constitutional challenge to an incarcerated plaintiff's conditions of confinement cannot be cured by altering anything other than some aspect of that plaintiff's confinement. When an incarcerated person alleges that her detention violates the Constitution, she is directly attacking the actions prison officials have taken as part of her confinement—in other words, she is challenging "the legality of [her] physical confinement itself." *See Preiser*, 411 U.S. at 488 n.8.

## III. Precluding judicial review of conditions-of-confinement claims raises serious constitutional problems.

*Glaus* flouts more than the Supreme Court. It also flouts the Constitution. Under *Glaus*'s interpretation of § 2241, most people held in federal custody lack any avenue for challenging their unconstitutional conditions of confinement. *See Glaus*, 408 F.3d at 386. But interpreting a statute to "leave prisoners without a remedy for violations of their

17

constitutional rights … raise[s] serious constitutional concerns." *Brown v. Plata*, 563 U.S. 493, 526 (2011) (refusing to interpret the PLRA to deny incarcerated people any remedy for violations of their Eighth Amendment rights).

*Glaus* therefore subjects federally incarcerated plaintiffs to unique disfavor. *Cf. Samak v. Warden, FCC Coleman-Medium*, 766 F.3d 1271, 1291 (11th Cir. 2014) (Pryor, J., concurring) ("A prisoner who challenges the execution of his sentence must have a forum where he may bring that challenge."). People held in state prison can rely on 42 U.S.C. § 1983 to challenge unconstitutional conditions of confinement. *See* 42 U.S.C. § 1983 (creating a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws"). Those held in federal prison cannot access any parallel civil rights law to vindicate their constitutional rights.

*Glaus* glances at the availability of a "*Bivens* theory" as an alternative to habeas for challenging unconstitutional conditions of confinement. *See Glaus*, 408 F.3d at 386. But the possibility of raising a *Bivens* claim to remedy unlawful prison conditions is more illusory than real. In accordance with the Supreme Court's instructions "that even a

18

'modest extension' of an existing [*Bivens*] context is all but forbidden," this Court has denied the existence of a *Bivens* remedy in all but a narrow universe of Eighth Amendment claims. *Sargeant v. Barfield*, 87 F.4th 358, 366 (7th Cir. 2023) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 147 (2017)); *see id.* (*Bivens* unavailable for challenge to prison officials' housing assignments); *Thomas v. Carmichael*, 164 F.4th 1058, 1065 (7th Cir. 2026) (same); *Brooks v. Richardson*, 131 F.4th 613, 616 (7th Cir. 2025) (*Bivens* unavailable for failure to "prescribe appropriate protocols for the first-line medical staff to follow"); *Skyberg v. James*, No. 24-3156, 2025 WL 1672871, at *2 (7th Cir. June 13, 2025) (*Bivens* unavailable for challenge to "conditions of [prisoner's] confinement" rather than "the adequacy of his medical care"). The district court's implied invocation of a *Bivens* remedy here, citing *Glaus*, is even more inapt. Mr. Tomkins is challenging a prison policy, not asking for damages. *See Ziglar*, 582 U.S. at 140 ("[A] *Bivens* action is not 'a proper vehicle for altering an entity's policy.'" (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

With neither habeas nor a *Bivens* cause of action available, a federally incarcerated plaintiff is almost always left without a way to remedy unconstitutional conditions of confinement. The Administrative

19

Procedure Act does not reach many constitutional claims. *See, e.g.*, *Robinson v. Sherrod*, 631 F.3d 839, 842 (7th Cir. 2011) (finding the APA inapplicable to an incarcerated person's Eighth Amendment claim). The Federal Tort Claims Act, too, is often out of reach. *See Linder v. United States*, 937 F.3d 1087, 1090 (7th Cir. 2019) ("[T]he Federal Tort Claims Act . . . does not apply to constitutional violations."). As such, *Glaus*'s reading of 28 U.S.C. § 2241 cannot stand: Neither the Constitution nor federal law permits federal prisons to operate as rights-free zones.

Even if equitable considerations could overcome constitutional requirements (they cannot), the practical implications of setting aside *Glaus* are minimal. Overturning *Glaus* would allow those held in federal custody—who currently have no remedy when prison officials "fail[] to protect [them] from violent attacks by [their] cellmates," *Sargeant*, 87 F.4th at 360; cause them to suffer "agonizing pain," *Brooks*, 131 F.4th at 613; or interfere with their access to the courts, as happened to Mr. Tomkins here—to access the same relief already available to those held in state prisons. The Constitution mandates that they be allowed to do so.

The Supreme Court was clear: "Courts should presume that Congress was sensitive to the real-world problems faced by those who would remedy constitutional violations in the prisons and that Congress did not leave prisoners without a remedy for violations of their constitutional rights." *Plata*, 563 U.S. at 526; *see also Webster v. Doe*, 486 U.S. 592, 603 (1988) (noting "the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim" (internal quotation marks and citation omitted)). By denying federally incarcerated plaintiffs an avenue to challenge unconstitutional conditions of confinement, *Glaus*'s reading of 28 U.S.C. § 2241 does the opposite. *Glaus* must yield to the requirements of the Constitution and the instructions of the Supreme Court.

## CONCLUSION

Accordingly, *amici* respectfully urge this Court to set aside its decision in *Glaus v. Anderson*, 408 F.3d 382 (2005), and allow Mr. Tomkins's habeas petition to proceed.

Dated: March 24, 2026

Respectfully submitted,

/s/ *Priyanka Menon*

Priyanka Menon
Camille Bennett
ROGER BALDWIN FOUNDATION OF
ACLU, INC.
150 N. Michigan Ave. Suite 600
Chicago, IL 60601
pmenon@aclu-il.org
cbennett@aclu-il.org

Jennifer A. Wedekind
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
jwedekind@aclu.org

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,694 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Century Schoolbook font.

Dated: March 24, 2026                    */s/ Priyanka Menon*
                                         Priyanka Menon

# CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit, causing notice of such filing to be served upon all parties registered on the CM/ECF system.

*/s/ Priyanka Menon*
Priyanka Menon

24